[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
The plaintiff Summit Heights, a general partnership, (hereinafter "Summit") seeks to recover from the defendant for damages it allegedly incurred because the defendant failed to perform design and engineering services in a timely fashion.
The defendant claims it performed in accordance with the agreement between the parties, but that it refused to release final documents because the plaintiff neglected to pay for the services rendered.
DISCUSSION
The plaintiff's claim involves a subdivision application which was prepared by the defendant after two delays, one caused by the City and the other resulting from a denial by the City in the face of violent opposition. In preparation for a re-submission, the parties met. The defendant stated its unwillingness to proceed until a long-standing overdue bill for services rendered was paid.
At this point, a compromise was effected which called for the defendant to waive interest and to accept the sum of $24,000 in full settlement of its bill to that date. This sum was to be paid in three installments of $8,000 each, one forthwith, one at submission, and the final payment upon approval.
The first payment was not made until September of 1989, whereupon the defendant started work on the submission. At the approval date of January 10, 1990, no further payments had been made and in Exhibit K offered by the plaintiff, there is reference to a January 19, 1990 meeting at which the defendant takes the position that without payment of its bill, it will not produce the mylar copies required for final approval. CT Page 7151
This January 1990 approval lapsed in the absence of the mylars and the plaintiff claims it had to resubmit the application and start over, with the subsequent delay causing their various losses.
The court finds the defendant's version of these events the more plausible as it is reinforced by Exhibit K, the $8,000 payment Exhibit 3, Exhibit 2, et als.
Save for unsupported oral statements, the plaintiff produced no evidence showing an interest in the status of the application, a demand that the defendant produce the mylars, nor an inquiry as to the status of things.
It is also significant that the members of the Summit Heights partnership were experienced in the fields of construction and land development. They had to know that Summit would be required to post a performance bond before it could receive final approval. There is no evidence that any steps were taken to ascertain the amount of the bond or to implement its filing. The filing of the bond is a prerequisite to the filing of the mylars (Exh. 1).
The defendant also produced evidence of a custom in the field whereby firms engaged in the preparation and submission of subdivisions require payment before releasing mylars.
It is therefore the conclusion of the court that the defendant was not guilty of misfeasance in the handling of this application but rather that it exercised its valid prerogative to demand payment before finalizing the process. The court also concludes that Summit was aware of the defendant's position and of its proposed action.
 II
Though the above determination resolves all the issues in this case, the court feels obliged to address the issue of damages in the event an appeal is taken.
Summit's claim is based on the premise that as a result of the lapsing of the approval of the subdivision, it was not until sometime in 1991 that the second plan was approved. And, it is claimed, by that time, the market had reached a point rendering completion of the project impossible. The loss of the property, CT Page 7152 profits and the inability to recoup costs ensued.
The only evidence on this claim came from individual partners. Charles Torcellini testified that the market had become "soft", and banks now rejected applications for financing. Pasquale Giuliano stated that after the second approval the market changed for one-family residences.
The court heard from no expert on market conditions, housing demands or financing opportunities. No specific dates were presented as to when these market conditions changed and there was no data as to the extent of the change.
Had the court found in favor of the plaintiff on the issue of liability, no damage award could be premised on the general comments presented to support the damage claim.
CONCLUSION
Judgment may enter for the defendant Orsine, Cotter Carson, Incorporated. The defendant is entitled to its taxable costs.
Anthony V. DeMayo, Judge Trial Referee